UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS JUSTIN SJOBERG, | Case No. 3:20-cv-00322-ART-CLB |
| Petitioner, | ORDER |
| v. | |
| JOHN HENLEY,[1] | |
| Respondents. | |

Petitioner Thomas Justin Sjoberg ("Petitioner" or "Sjoberg"), who entered an *Alford*[2] plea to lewdness with a child under the age of 14 years and was sentenced to ten years to life in prison, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (*See* ECF Nos. 1; 17-7.) This matter is before this court for adjudication of the merits of the remaining ground[3] in Sjoberg's petition, which alleges that his counsel was ineffective in advising him to enter an *Alford* plea rather than filing a motion to suppress his law enforcement interview. (ECF No. 1 at 25.) Given that Sjoberg was subjected to a custodial interrogation without a valid waiver of his *Miranda* rights, this court grants the petition.

I.   **BACKGROUND**

The State filed a criminal complaint in state justice court charging Sjoberg with various counts regarding his alleged conduct towards his stepdaughter, A.L.[4]: sexual assault on a child under the age of 16 years; lewdness with a child

---

[1] The state corrections department's inmate locator page states that Sjoberg is incarcerated at Northern Nevada Correctional Center. John Henley is the current warden for that facility. At the end of this order, this court directs the clerk to substitute John Henley as a respondent for Respondent Isidro Baca. *See* Fed. R. Civ. P. 25(d).

[2] *See North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970) (holding that a defendant can enter a valid guilty plea while still maintaining his innocence where there is a factual basis for the plea and the plea is voluntary, knowing, and intelligent).

[3] This court previously dismissed ground 1 based on *Tollett v. Henderson*, 411 U.S. 258 (1973). (*See* ECF No. 28 at 3–4.)

[4] The Local Rules of Practice state that "[p]arties must refrain from including—or must partially redact, where inclusion is necessary—[certain] personal-data identifiers from all documents filed with the court, including exhibits, whether filed electronically or in paper, unless the court orders

1

under the age of 14 years; abuse, neglect, and/or endangerment of a child; battery with intent to commit sexual assault; and open or gross lewdness. (ECF No. 16-1 at 11–13.) Sjoberg conditionally waived his preliminary hearing "for the purpose of obtaining a competency evaluation." (*Id.* at 18.) Sjoberg's case was transferred to the state district court. (*Id.* at 2.)

Following a request by Sjoberg's counsel who represented him through his arraignment (hereinafter "arraignment counsel"), the state district court issued an order for competency, ordering Sjoberg to be evaluated at Lake's Crossing to determine his "ability to assist his counsel in presenting a defense with a reasonable degree of rational understanding." (ECF No. 16-5 at 3.) Sjoberg's competency evaluation was conducted and indicated that Sjoberg was competent, so the state district court remanded the case to the state justice court for a preliminary hearing. (ECF No. 16-7 at 4–7.) Sjoberg waived that hearing, and his case was transferred back to the state district court. (ECF No. 16-9 at 27–28.) A week later, the State filed a new information amending Sjoberg's charges to a single count of lewdness with a child under the age of 14 years. (ECF No. 16-10.) Sjoberg entered an *Alford* plea to the single charge in return for the State agreeing to dismiss the other original charges. (ECF Nos. 16-12 at 10; 16-13 at 2.)

Prior to sentencing, Sjoberg received new counsel (hereinafter "post-arraignment counsel") and moved for a new trial, which the state district court construed as moving to withdraw his plea. (ECF Nos. 16-16; 16-18 at 4.) After an evidentiary hearing, the state district court denied the motion. (ECF Nos. 17-1; 17-2.) Sjoberg was sentenced to ten years to life in prison. (ECF No. 17-7.) Sjoberg appealed, and the Nevada Court of Appeals affirmed. (ECF No. 18-5.)

Sjoberg filed a post-conviction habeas corpus petition in state court. (ECF No. 18-7.) An evidentiary hearing was held on Sjoberg's petition, and Sjoberg's

---

otherwise." LR IA 6-1(a). This includes the names of minor children, so this court only uses the victim's initials.

2

arraignment counsel, among others, testified. (ECF No. 21-1.) The state district court denied the petition. (ECF No. 22-1.) Sjoberg appealed, and the Nevada Court of Appeals affirmed. (ECF No. 23-4.) Sjoberg then filed the instant federal habeas corpus petition. (ECF No. 1.)

## II. GOVERNING STANDARDS OF REVIEW

### A. Antiterrorism and Effective Death Penalty Act ("AEDPA")

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, when "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).

### B. Standard for effective-assistance-of-counsel claims

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).

When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

## III. DISCUSSION

In ground 2, Sjoberg's sole remaining ground for relief, he argues that his arraignment counsel provided ineffective assistance in advising him to enter an *Alford* plead rather than filing a motion to suppress his law enforcement interview in violation of his Fourth, Sixth, and Fourteenth Amendment rights to effective assistance of counsel, freedom from involuntary seizure, and due process. (ECF No. 1 at 25.) Specifically, Sjoberg argues that his arraignment counsel should have moved to suppress the interview because he was in custody and his waiver of his *Miranda* rights was not voluntary. (*Id.* at 25–30.)

### A. Background information

#### 1. Law enforcement interview

On May 6, 2015, Lyon County Deputy Sheriff Wayne Hawley ("Deputy Hawley") "took a walk-in report at the Fernley sub-station of a juvenile sexual

4

assault." (ECF No. 16-1 at 3.) Jennifer Sjoberg, Sjoberg's wife, and A.L., who was 16-years old at the time, alleged that Sjoberg had touched A.L. inappropriately. That same day, Deputy Hawley located Sjoberg at the Fernley Wal-Mart and, allegedly, asked him to participate in a voluntary law enforcement interview. (*Id.*) According to Deputy Hawley, Sjoberg agreed even though he was forced to ride in the back of Deputy Hawley's vehicle because he did not have his own transportation. (*Id.*)

During the interview,[5] which took place in an enclosed interrogation room within the police station, Sjoberg told Deputy Hawley about his various conditions affecting both his physical and cognitive abilities: he has detrimental hearing loss, suffers from cerebral palsy, and is affected by significant brain damage. (ECF No. 17-6 at 5, 7, 17.) In response to Deputy Hawley's questions, Sjoberg stated that he never intentionally touched A.L. inappropriately, explaining, as best as he was able, that he had only touched her breasts accidently while hugging her. (*Id.* at 14–15.)

Deputy Hawley challenged Sjoberg on why he did not deny the sexual assault accusations when his wife texted him prior to the interrogation. (*Id.* at 21.) Sjoberg explained that his wife was obstinate and arguing with her was futile. (*Id.* at 20.) Deputy Hawley argued that he did not believe Sjoberg. (*Id.* at 22.)

Deputy Hawley questioned Sjoberg about making A.L. urinate on his hand. (*Id.* at 22.) Sjoberg indicated that on one occasion he brought A.L. toilet paper while she was sitting on the toilet, and "[w]hen she was leaning over[,] . . . something from the counter dropped in to the toilet and [he] went to grab it." (*Id.* at 22–23.) Following this response, Deputy Hawley informed Sjoberg of his *Miranda* rights.[6] (*Id.* at 23.) Deputy Hawley asked Sjoberg if he understood, but

---

[5] A transcript and a video of this interview were both provided to, and reviewed by, this court. (*See* ECF Nos. 15; 17-7.)

[6] The taped interview demonstrates that Deputy Hawley gave Sjoberg his *Miranda* rights approximately twenty-six minutes into the hour-and-ten-minute interview. (ECF No. 15.)

5

Sjoberg only responded nonverbally, nodding his head. (*Id.* at 23–24.) Deputy Hawley continued his interrogation, asking Sjoberg to explain "that part again how [he] got urine on [his] hand." (*Id.* at 24.) Sjoberg declined to repeat his statement, so Deputy Hawley repeated it to Sjoberg. (*Id.* at 24.) Sjoberg, rather unconvincingly, agreed. (*Id.*)

Later, Deputy Hawley asked Sjoberg if his body made him go into the bathroom and touch A.L., and Sjoberg vaguely answered, "[s]ometimes." (*Id.* at 55.) Sjoberg also stated that he "accidentally touched her under the underwear . . . [a] few times maybe." (*Id.*) Deputy Hawley then reiterated the question, asking "sometimes you go, when she's in the bathroom, you go in there and your hand goes in to her underwear." (*Id.* at 56.) Sjoberg again vaguely responded, "[r]ight." (*Id.*)

### 2. Motion to withdraw guilty plea

Sjoberg's post-arraignment counsel moved to withdraw his plea, arguing that Sjoberg's arraignment counsel was ineffective in failing to move to suppress his law enforcement interview. (ECF No. 16-16.) An evidentiary hearing was held on the motion. (ECF No. 17-1.)

At the evidentiary hearing, Sjoberg's adoptive father, James Sjoberg, testified that Sjoberg suffers from cerebral palsy and "fairly severe" hearing loss, necessitating the need for a hearing aid. (*Id.* at 5–6.) James Sjoberg also testified that Sjoberg is "pretty good at reading lips" but "may answer inappropriately sometimes" in an attempt to be cooperative and "kind of cover[ ] up the hearing loss." (*Id.* at 6–8.) Terry Jacobson, Sjoberg's stepmother, confirmed that Sjoberg is "mostly deaf." (*Id.* at 11–12.) Jacobson testified that she watched Sjoberg's law enforcement interview, and "[i]t was [her] opinion that [Sjoberg] didn't understand anything that was going on, that he was very confused." (*Id.* at 13.) Jacobson also testified that Sjoberg "probably would not admit to having a hearing deficit" to a stranger. (*Id.* at 16.)

6

Deputy Hawley testified that Sjoberg was not in custody at the time of the interrogation and came in voluntarily. (*Id.* at 34.) Deputy Hawley also testified that Sjoberg "seem[ed] to understand the question [he was] asking him." Deputy Hawley placed Sjoberg under arrest at the conclusion of the interview. (*Id.* at 37.)

The state district court denied Sjoberg's motion to withdraw his plea, finding that "it's unlikely a motion to suppress would have been granted or will be granted or could be granted in this particular . . . case." (*Id.* at 49.)

### 3. Post-conviction evidentiary hearing

At the post-conviction evidentiary hearing, Dr. Theodore Young, a clinical neuropsychologist, testified that he reviewed Sjoberg's previous psychological reports and various court proceeding transcripts, conducted a clinical interview of Sjoberg at Northern Nevada Correctional Center, and performed a "battery of neuropsychological tests" on Sjoberg. (ECF No. 21-1 at 11, 13–17.) Dr. Young found, *inter alia*, that (1) Sjoberg's verbal comprehension index was "in the ninth percentile for age match peers," meaning he was "in that borderline range," (2) Sjoberg's nonverbal aspects of intellectual activity were "quite strong," (3) Sjoberg's overall I.Q. was in the seventh percentile, (4) Sjoberg's "general intellectual deficits" were "probably a manifestation of [his] congenital brain injury," (5) Sjoberg "would be specifically at a disadvantage" in a confrontational interview, and (6) "the give and take of a quick paced conversation would just go over [Sjoberg's] head." (*Id.* at 18–19, 21, 25, 28, 46.)

Sjoberg's arraignment counsel testified she was aware that Sjoberg suffered from cerebral palsy, deafness, and brain damage and that he was under the influence of prescription medications at the time of his law enforcement interview. (ECF No. 21-1 at 131.) However, Sjoberg's arraignment counsel decided not to move to suppress the interrogation  because: (1) she "felt like it would be unsuccessful because [Sjoberg] was not in custody at the time that he was being interviewed" since he "walked into the room freely, [and] he was not in handcuffs,"

7

(2) "the manner in which [Deputy Hawley] interviewed [Sjoberg] was lawful," (3) "the admissions that [Sjoberg] made [during the interview] were not necessarily that extraordinary" because they were "in the context of him saying it was an accident" and "only covered the lewdness charge," (4) she not recall Sjoberg ever conveying to her that he "wasn't able to understand what [Detective Hawley] was saying" during the interview, (5) "there was an exchange of information and communication back and forth [between Detective Hawley and Sjoberg]," and Sjoberg gave "appropriate responses to Deputy Hawley," and (6) "the video wasn't that important to the prosecution's case" because she believed "the State could still get a conviction . . . on the case because . . . [A.L.] was very credible." (*Id.* at 88, 91–92, 94–96, 102, 105.)

Sjoberg testified that Deputy Hawley contacted him outside his place of employment after he got off work and "demanded [Sjoberg] to get in the police car," telling Sjoberg he was "going to the station." (*Id.* at 167.) Sjoberg testified that he asked Deputy Hawley "before [he] got in the car if [he] could use the bathroom," and Deputy Hawley responded by "brandish[ing] his gun at [Sjoberg] and [telling him] to stay in the car." (*Id.* at 174.) Sjoberg sat in the back of Deputy Hawley's police car, and Deputy Hawley indicated to Sjoberg that he was "not going to put handcuffs on [him] because [he was] a disability [sic]." (*Id.* at 167–68.) Sjoberg did not have his hearing aids, but he told Deputy Hawley about his hearing issues. (*Id.* at 166.) Sjoberg testified that he had taken Vicodin, Percocet, Oxycontin, and Oxycodone earlier that day. (*Id.* at 168.)

Turning to the interview itself, Sjoberg testified that (1) Deputy Hawley never gave him his *Miranda* rights in a written document, (2) he was never asked to sign a waiver of his rights, (3) he did not understand when Deputy Hawley verbally gave him his *Miranda* rights in the middle of the interview, (4) he did not believe he was free to leave the interview, (5) the door to the interview room was closed, (6) Deputy Hawley was in a police uniform, (7) he was not offered any

8

water, and (8) he felt intimidated by Deputy Hawley. (*Id.* at 168–69, 173–74.)

## B. Standard for custodial interrogation

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Custodial interrogation "mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

"[T]he ultimate inquiry" of whether someone is in custody "is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted). There are "[t]wo discrete inquiries" to determine whether an individual is in custody: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Relevant factors in ascertaining how an individual would assess his freedom of movement "include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal citations omitted). The "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the

interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994).

### C. State court determination

In affirming the denial of Sjoberg's state postconviction petition for a writ of habeas corpus, the Nevada Court of Appeals held:

> Second, Sjoberg argued his counsel was ineffective for failing to move to suppress his statement to the police. Sjoberg contended that counsel should have investigated his mental difficulties and hearing loss, and then asserted that those issues caused his statement to have been taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), NRS 171.1526, and NRS 171.1538.
>
> At the evidentiary hearing, Sjoberg's counsel testified that she was aware Sjoberg had cerebral palsy and hearing loss. However, she testified that she had no trouble communicating with him and he had not indicated to her that he had been unable to understand the deputy during the interview. Counsel also testified that based upon her review of the interview, she concluded that Sjoberg had not undergone a custodial interrogation and, therefore, *Miranda* did not apply. She stated she did not file a motion to suppress because she concluded that it would not have been successful. Counsel also testified that she did not believe that Sjoberg's statements to the deputy were significant and concluded that Sjoberg would have likely been convicted based upon the victim's statements even if his own had been suppressed.
>
> The district court found that counsel's decisions with respect to Sjoberg's interview were reasonable under the circumstances in this case. Substantial evidence supports the district court's decision. *See Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989). The district court also found that the video recording depicting the interview demonstrated that the deputy advised Sjoberg of his *Miranda* rights and Sjoberg nodded in response, indicating he understood those rights. Because Sjoberg indicated he understood his rights and continued to talk to the deputy, the district court found Sjoberg failed to demonstrate a reasonable probability he would have refused to enter an *Alford* plea and would have insisted on proceeding to trial had counsel moved to suppress his statement based upon *Miranda*.
>
> In addition, the district court found Sjoberg failed to demonstrate a reasonable probability he would have refused to enter an *Alford* plea and would have insisted on proceeding to trial had

>counsel moved to suppress his statement based on NRS 171.1536 and NRS 171.1538. The district court found Sjoberg was not under arrest when the interview took place. Therefore, the district court determined NRS 171.1536 and NRS 171.1538 did not apply to Sjoberg's interview because those statutes discuss actions to be taken after a person with a communications disability or other disability has been arrested. Substantial evidence supports the district court's findings. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 23-4 at 4–6.)

### D. Analysis

Sjoberg's arraignment counsel testified that she did not move to suppress his law enforcement interview, in part, because Sjoberg was not in custody at the time of the interrogation. For the reasons discussed below, this court finds (1) this conclusion by Sjoberg's arraignment counsel was objectively unreasonable, and (2) the Nevada Court of Appeals' finding that substantial evidence supported the state court's decision that Sjoberg's arraignment counsel did not act deficiently in strategically deciding not to pursue a motion to suppress amounted to an unreasonable application of *Strickland*. *See Wiggins v Smith*, 539 U.S. 510, 533 (2003) (explaining that strategic choices are reasonable only to the extent that they are based on reasonable professional judgment). Accordingly, because there is no reasonable argument that Sjoberg's arraignment counsel satisfied *Strickland*'s deferential standard regarding her conclusion that Sjoberg was not in custody, deference is not owed to Sjoberg's arraignment counsel nor to the Nevada Court of Appeals' denial of relief. Accordingly, having overcome the double level of deference present in this ground, Sjoberg demonstrates that de novo review is warranted. *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference AEDPA normally requires").

There are a multitude of factors indicating, objectively, that a reasonable person in Sjoberg's position would not have felt that he or she was at liberty to

terminate the interrogation[7] and leave: Deputy Hawley publicly confronted Sjoberg outside his place of employment, Deputy Hawley was in uniform and had a weapon on his person when he requested that Sjoberg come to the police station for an interview, Deputy Hawley allegedly indicated that he would have handcuffed Sjoberg if not for his physical disabilities, Deputy Hawley transported Sjoberg in the back seat of his law enforcement vehicle like a criminal, the interrogation took place in an enclosed interrogation room within the police station, Deputy Hawley sat on an adjacent side of the table so that he was between Sjoberg and the door, Sjoberg was not able to leave the police station unassisted since he did not have transportation, Sjoberg was obviously the target—not merely a witness—of Deputy Hawley's investigation, Deputy Hawley confronted Sjoberg with evidence of his guilt, Deputy Hawley's tone throughout the interview was hostile, Deputy Hawley stated numerous times that he did not believe Sjoberg, Deputy Hawley denied Sjoberg's request to use the restroom, the interrogation lasted a prolonged period of time (over an hour), and Deputy Hawley arrested Sjoberg at the end of the interrogation. These factors fit squarely within the Supreme Court's matrix of determining that a suspect is in custody for purposes of *Miranda*. *See, e.g., Yarborough v. Alvarado*, 541 U.S. 652, 664–65 (2004) (concluding that the defendant was not in custody since he was not transported by the police to the station, the police did not suggest that he would be placed under arrest, his parents remained in the lobby during the interview, he was asked twice if he wanted to take a break, and he was allowed to go home following the interview); *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (concluding that it takes more than the police interview taking place at the police station and the defendant being a suspect to find that the defendant was in custody for purposes of *Miranda*); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)

---

[7] There is no dispute that the interview amounted to an interrogation.

(concluding that the defendant was not in custody because "[h]e came voluntarily to the police station, . . . he was immediately informed that he was not under arrest," the interview only lasted thirty minutes, and he was allowed to go home at the end of the interview). Sjoberg's arraignment counsel testified that she based her custody determination on only the fact that Sjoberg "walked into the room freely, [and] he was not in handcuffs." Sjoberg's arraignment counsel's focus on these two factors—while ignoring or failing to give proper consideration to the myriad of other relevant factors at play here—was erroneous and fell below an objective standard of reasonableness.

Turning to prejudice, Sjoberg must demonstrate the following (1) a motion to suppress would have been meritorious, and (2) he would not have pleaded guilty pursuant to *Alford* if his interrogation had been suppressed.

First, a fruitful motion to suppress requires a demonstration of either an improper giving of *Miranda* warnings or an invalid waiver of that warning. *See Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986) (explaining that in alleging that counsel failed to file a pretrial motion to suppress evidence, the petitioner must establish, in part, a reasonable probability that the evidence would have been suppressed). Sjoberg can demonstrate both.[8]

Deputy Hawley delayed reciting the *Miranda* warning until after Sjoberg made admissions. This violates *Missouri v. Seibert*. 542 U.S. 600, 617 (2004) (determining that midstream *Miranda* warnings "could [not] have served their purpose" and ruling that post-warning statements are inadmissible). Alternatively, and more significantly, Sjoberg demonstrates that his waiver of his *Miranda* rights was unknowing and/or unintelligent. *See Maryland v. Shatzer*, 559 U.S. 98, 104 (2010) ("To establish a valid waiver [of one's right to remain

---

[8] Notably, even though the state court denied Sjoberg's motion to withdraw his plea because it would not have granted a motion to suppress had one been filed, this court must look to what an "[o]bjective decisionmaker" would do, ignoring the "idiosyncrasies of the particular decisionmaker." *Strickland*, 466 U.S. at 695.

silent and right to the presence of an attorney] was knowing, intelligent, and voluntary."). Because Sjoberg suffered from a hearing disability and was subject to a custodial interrogation, Nevada law required that an interpreter be provided. *See* NRS §§ 171.1536, 171.1538. Because Deputy Hawley did not provide Sjoberg with the option of reading his *Miranda* rights from a prepared card,[9] Deputy Hawley's failure to provide Sjoberg with an interpreter as required under Nevada law was especially egregious. These failures, in combination with Sjoberg's ambiguous confirmation of receipt of the information—a mere unreliable head nod—resulted in Sjoberg being unable to properly hear and thus waive his rights. Moreover, in addition to Sjoberg's physical disabilities preventing him from understanding the *Miranda* warning from an auditory standpoint, Sjoberg also suffered from acute mental disabilities, including a congenital brain injury. Based on the totality of these circumstances, the court finds that Sjoberg's disabilities prevented him from knowingly and intelligently hearing and waiving his *Miranda* rights.

Second, Sjoberg demonstrates that he would have insisted on going to trial absent his trial counsel's failure to file a motion to suppress given that he moved to withdraw his plea prior to sentencing. Indeed, in that motion, Sjoberg stated that his arraignment counsel's "failure to file the motion to suppress was the crux of the entire guilty plea agreement." (ECF No. 16-16 at 5.) Additionally, Sjoberg's *Alford* plea, which amounts to a lack of acceptance of guilt, supports a finding that Sjoberg would have insisted on going to trial. In sum, because Sjoberg's arraignment counsel was deficient and Sjoberg suffered prejudice as a result, he is entitled to federal habeas relief.

---

[9] *See United States v. Venegas*, 594 Fed.Appx. 822, 828 (5th Cir.) ("[A] hearing-impaired suspect may validly waive his or her *Miranda* rights even when the interrogating officer does not employ a sign-language interpreter at all, but instead administers a written warning alone."); *People v. Brannon*, 486 N.W.2d 83, 88 (Mich. App. 1992) ("The use of a written form becomes more palatable in a case involving a defendant who is hearing-impaired.").

## V. CONCLUSION

It is therefore ordered that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is granted. Petitioner Thomas Sjoberg's judgment of conviction filed on May 5, 2016, in case number 15-CR-00677, in the Third Judicial District Court for the State of Nevada in and for the County of Lyon is vacated. Sjoberg's *Alford* plea is also vacated. Within 30 days[10] of the later of (1) the conclusion of any proceedings seeking appellate or certiorari review of this court's judgment, if affirmed, or (2) the expiration for seeking such appeal or review, the state court must hold a status hearing in this matter to determine whether the State plans to try Sjoberg.

It is further ordered that the Clerk of the Court is directed to (1) substitute John Henley for Respondent Isidro Baca, (2) enter judgment accordingly, (3) provide a copy of this Order and the judgment to the Clerk of the Third Judicial District Court for the State of Nevada in connection with that court's case number 15-CR-00677, and (4) close this case.

Dated this 10th day of February.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

---

[10] Reasonable requests for modification of this time may be made by either party.

15